[No. B036262. Second Dist., Div. Three. Oct 26, 1988.]

In re HAROLD JAMES BAERT on Habeas Corpus.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Alan Abajian, Charles Gessler and Henry J. Hall, Deputy Public Defenders, for Petitioner.

Ira Reiner, District Attorney, Harry B. Sondheim and Brent Riggs, Deputy District Attorneys, for Respondent.

OPINION

**ARABIAN, J.—**

### INTRODUCTION

■ "No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time." (*Kring* v. *Missouri* (1882) 107 U.S. 221, 235 [27 L.Ed. 506, 511, 2 S.Ct. 443].) Guided by this fundamental principle of due process, we confront the question, not yet addressed in the wake of *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306], whether its holding eliminating intent to kill as an element of the felony-murder special circumstance (Pen. Code, § 190.2, subd. (a)(17)) may be applied retroactively to crimes committed during the period when *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], required proof of intentionality. In our resolution, we answer that it may not.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute: Petitioner, Harold James Baert, stands accused of murder (Pen. Code, § 187), forcible rape (Pen. Code, § 261,

---

[1] The California Supreme Court has already determined that *People* v. *Anderson* may be applied retroactively to offenses committed prior to the finality of *Carlos* v. *Superior Court*. (See *People* v. *Poggi* (1988) 45 Cal.3d 306, 326-327 [246 Cal.Rptr. 886, 753 P.2d 1082]; *People* v. *Gates* (1987) 43 Cal.3d 1168, 1192-1193 [240 Cal.Rptr. 666, 743 P.2d 301], cert. den. *sub nom. Gates* v. *California* (1988) 486 U.S. 1027 [100 L.Ed.2d 236, 108 S.Ct. 2005]; see also *People* v. *Easter* (1987) 197 Cal.App.3d 183, 186 [242 Cal.Rptr. 746].) We find nothing in our analysis or conclusion inconsistent with that determination.

subd. (2)), and robbery (Pen. Code, § 211). Of relevance to the matter before us, the prosecution also charged pursuant to Penal Code section 190.2, subdivision (a)(17), that he committed the murder while engaged in the commission of rape, attempted rape, and robbery. If found to be true, the special circumstance would subject petitioner to a possible death sentence. (Pen. Code, §§ 190, 190.2, subd. (a)(17).)

The information alleged the date of the offenses as August 21, 1987. On October 13, 1987, the California Supreme Court rendered its decision in *People* v. *Anderson, supra,* 43 Cal.3d 1104, in part overruling the holding in *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, requiring proof of an intentional killing to sustain a felony-murder special circumstance finding pursuant to Penal Code section 190.2, subdivision (a)(17).

Asserting that the intentionality requirement was the effective law at the time of his crimes and that the preliminary hearing testimony contained no evidence of this requisite intent, petitioner moved to strike these special circumstance allegations. (Pen. Code, § 995.) The trial court denied the motion and indicated it would not instruct the jury, consistent with *Carlos,* that intent to kill was a necessary element of the felony-murder special circumstance. After a discussion amongst the court and counsel, the parties agreed to a continuance so that petitioner could seek pretrial review of this ruling. The prosecution also desired resolution of the issue since it intended to allow petitioner to plead guilty for life imprisonment without possibility of parole if required to prove he intended to kill his victim.

Petitioner sought review by petition for writ of habeas corpus. (See Pen. Code, § 1487; *In re Berry* (1968) 68 Cal.2d 137, 145-146 [65 Cal.Rptr. 273, 436 P.2d 273]; *In re Bell* (1942) 19 Cal.2d 488, 492-495 [122 P.2d 22].) We issued an order to show cause directing the Los Angeles County District Attorney's Office to file an answer (return); and petitioner has also filed a traverse.

### DISCUSSION

We begin with a brief explanation of relevant constitutional principles. ▌ Both the United States and California Constitutions forbid the enactment of ex post facto laws. (U.S. Const., art. I, §§ 9, 10; Cal. Const. art. I, § 9.) An ex post facto law is "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . ." (*Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-170 [70 L.Ed. 216, 217, 46 S.Ct. 68]; *Bouie* v.

*Columbia* (1964) 378 U.S. 347, 353 [12 L.Ed.2d 894, 899-900, 84 S.Ct. 1697].)

■ "The Ex Post Facto Clause is a limitation upon the powers of the legislature, [citation], and does not of its own force apply to the Judicial Branch of government. [Citation.] But the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty. [Citations.]" (*Marks* v. *United States* (1977) 430 U.S. 188, 191-192 [51 L.Ed.2d 260, 265, 97 S.Ct. 990].) "[J]udicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness" (*Pierce* v. *United States* (1941) 314 U.S. 306, 311 [86 L.Ed. 226, 231, 62 S.Ct. 237]) and, when "applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." (*Bouie* v. *Columbia, supra,* 378 U.S. at p. 353 [12 L.Ed.2d at p. 899].)

Thus, "[i]f a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. [Citation.] The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' [citation], must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. [Citation.]" (378 U.S. at pp. 353-354 [12 L.Ed.2d at p. 900]; see *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631-636 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

The facts of *Bouie* v. *Columbia, supra,* 378 U.S. 347, illustrate the operation of the due process clause to prevent the same type of mischief as the ex post facto clause when it results from judicial rather than legislative change in the law. In *Bouie,* black defendants were convicted under South Carolina's criminal trespass statute when they refused to leave a segregated lunch counter after being asked to do so. On its face, the statute defined as a misdemeanor " '[e]very entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry . . .' " (*id.,* at p. 349, fn. 1 [12 L.Ed.2d at p. 897]); and no state appellate court had ever interpreted its scope other than consistent with the plain import of its terms. (*Id.,* at pp. 355-359 [12 L.Ed.2d at pp. 900-903].) Nevertheless, the South Carolina Supreme Court affirmed the convictions by "constru[ing] the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises of another

after receiving notice to leave." (*Id.,* at p. 350 [12 L.Ed.2d at p. 898], fn. omitted.) Finding this interpretation at variance with the statutory language and unsupported by any prior state court decisions, the United States Supreme Court reversed the convictions as violative of due process. The retroactive application of an unforeseeable judicial expansion of the law failed to provide "the fair warning to which the Constitution entitles [one]." (*Id.,* at p. 354 [12 L.Ed.2d at p. 900].)

With these considerations in mind, we turn to the facts of the instant case. In *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, the California Supreme Court held "that the felony murder special circumstance of the 1978 [death penalty] initiative requires proof that the defendant intended to kill. Specifically, we construe the word "intentionally' in subdivision (b) of [Penal Code] section 190.2 to apply to all defendants—actual killers and accomplices alike—and to require an intent to kill before a defendant is subject to a special circumstance finding under paragraph 17 [of subdivision (a)] of that section." (*Id.,* at pp. 153-154.) In *People* v. *Anderson, supra,* 43 Cal.3d 1104, the court readdressed this issue, reviewing substantially the same sources in making its redetermination. (*Id.,* at pp. 1139-1147.) However, principally in light of the United States Supreme Court's intervening decision in *Tison* v. *Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d 127, 109 S.Ct. 1676], this reexamination led to an opposite conclusion: "intent to kill is not an element of the felony-murder special circumstance; but when the defendant is an aider and abetter rather than the actual killer, intent must be proved before the trier of fact can find the special circumstance to be true." (*People* v. *Anderson, supra,* 43 Cal.3d at pp. 1138-1139.)

Unquestionably, *Anderson* effected so substantial a change in the law that retroactive application of a comparable legislative modification would be barred by the ex post facto clause. Not only does the change prescribe a greater punishment for the same conduct by subjecting the defendant to a possible death sentence without proof of an intent to kill, it also denies a crucial defense to the special circumstance allegation while concomitantly reducing the prosecution's burden of proof on that issue. (See *Lindsey* v. *Washington* (1937) 301 U.S. 397, 400-401 [81 L.Ed. 1182, 1185-1186, 57 S.Ct. 797]; *Beazell* v. *Ohio, supra,* 269 U.S. at pp. 169-170 [70 L.Ed. at pp. 217-218].) Moreover, *Anderson* did not merely provide a judicial clarification of Penal Code section 190.2, subdivision (a)(17). (See *Marks* v. *United States, supra,* 430 U.S. at p. 194 [51 L.Ed.2d at pp. 266-267]; see also, e.g., *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 472 [106 Cal.Rptr. 519, 82 A.L.R.3d 804], cert. den. *sub nom. Sobiek* v. *California,* 414 U.S. 855 [38 L.Ed.2d 104, 94 S.Ct. 155].) The holding of *Carlos* was unambiguous and consistently applied in accord with its express language. (See *People* v. *Garcia* (1984) 36 Cal.3d 539, 548-549 [205 Cal.Rptr. 265, 684 P.2d 826],

cert. den. *sub nom. California* v. *Garcia* (1985) 469 U.S. 1229 [84 L.Ed.2d 366, 105 S.Ct. 1229]; see also, e.g., *People* v. *Smith* (1986) 187 Cal.App.3d 666, 684-685 [231 Cal.Rptr. 897]; *People* v. *Brown* (1985) 169 Cal.App.3d 728, 736-744 [215 Cal.Rptr. 465], cert. den. *sub nom. Brown* v. *California* (1988) 484 U.S. 1014 [98 L.Ed.2d 667, 108 S.Ct. 717]; *People* v. *Kelly* (1985) 163 Cal.App.3d 619, 621-622 [209 Cal.Rptr. 634].)

We have not entered this fray without armor and note that the United States Court of Appeals applied a similar analysis in *Moore* v. *Wyrick* (8th Cir. 1985) 766 F.2d 1253, cert. den. *sub nom. Armontrout* v. *Moore* (1986) 475 U.S. 1032 [89 L.Ed.2d 350, 106 S.Ct. 1242]. There, the defendant participated in an attempted robbery that resulted in the inadvertent death of a bystander at the hands of another bystander; and he was convicted of first degree felony murder. In affirming the conviction, the Missouri Supreme Court construed the state felony murder statute to apply to the defendant's conduct even though it had previously determined otherwise under comparable facts. (766 F.2d at p. 1254.) On federal habeas corpus review, the court agreed that the decision "effected a significant change in Missouri's felony murder law as it existed [formerly] and as a result expanded the scope of the felony murder statute beyond its previous boundaries." (*Id.,* at p. 1257.) After further review of the earlier state of the law, the court concluded that the change was unforeseeable and thus could not be retroactively applied to the defendant. (*Id.,* at pp. 1257-1259.)

Here, we also find a comparably consistent application of *Carlos,* which, even if short-lived, rendered the about-face in *Anderson* "an unforeseeable judicial enlargement of a criminal statute . . . ." (*Bouie* v. *Columbia, supra,* 378 U.S. at p. 353 [12 L.Ed.2d at p. 899].) Respondent argues that, to the extent petitioner may have relied on the law as judicially interpreted, *Tison* v. *Arizona, supra,* should have put him on notice that *Carlos* was infirm and subject to being overruled at any time. At best this argument is based on conjectural suppositions, inferences, and conclusions. *Carlos* was decided by a six-to-one majority; and the court itself acknowledged in *Anderson* its traditional reluctance to override the impetus of stare decisis. (*People* v. *Anderson, supra,* 43 Cal.3d at pp. 1138, 1147.)[2]

---

[2]Although the precise question before us is the retroactive applicability of *Anderson,* respondent also argues at some length the superiority of the analysis in *Anderson* over that of *Carlos,* implicitly suggesting that our ultimate conclusion should be substantially influenced by that which is the "better" reasoned. However, the rationale of neither decision is before us. Moreover, holdings of the California Supreme Court constitute the ultimate and authoritative expression of state law. It is not our function or prerogative to adjudge the correctness of the court's analyses or to draw unwarranted inferences from a rapid judicial reexamination and reversal of any particular decision. Rather, it is our obligation to apply the law as so delineated to whatever facts may come before us, guided by relevant constitutional principles.

Moreover, we do not perceive the holding in *Tison* v. *Arizona, supra,* to have signaled a rapid and dramatic change in the interpretation of Penal Code section 190.2, subdivision (a)(17), with respect to the intentionality requirement. The defendants in *Tison* were aiders and abettors, and the decision principally clarified the question of whether they could be subject to the death penalty in light of *Enmund* v. *Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368], which held that the ultimate sanction could not be imposed against one who did not kill or attempt to kill during the course of a felony and was not present when the killing occurred. (*Id.,* at p. 801 [73 L.Ed.2d at p. 1154]; see *Tison* v. *Arizona, supra,* 481 U.S. at pp. 149-150 [95 L.Ed.2d at p. 139].) Petitioner in this case is not charged as an aider and abettor but as the actual perpetrator of the murder. Thus, even assuming his awareness of this development in the law, *Tison* hardly mandated that he anticipate an imminent reversal of *Carlos.*

Accordingly, we find that to try petitioner under the law as now expressed in *Anderson* would create exactly the situation condemned in *Bouie* v. *Columbia, supra,* 378 U.S. 347: "a statute precise on its face [as authoritatively construed by prior state supreme court interpretation] has been unforeseeably and retroactively expanded by judicial construction . . . ." (*Id.,* at p. 352 [12 L.Ed.2d at p. 899].) And, in the final analysis, the law is clear: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." (*Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct. 618].)

Respondent attempts to distinguish the underpinnings of *Bouie* v. *Columbia, supra,* by emphasizing that the judicial enlargement in that case criminalized conduct that was otherwise innocent. Thus, the defendants had no fair warning that, with a stroke of the state Supreme Court's pen, they would incur penal sanctions for actions they had no other reason to refrain from. Here, respondent argues, petitioner's assault on his victim, whether or not intended to result in her death, was *ab initio* societally unacceptable. (See, e.g., *People* v. *Sobiek, supra,* 30 Cal.App.3d at pp. 474-476; see also *People* v. *Weidert* (1985) 39 Cal.3d 836, 860 [218 Cal.Rptr. 57, 705 P.2d 380], Lucas, J., concurring and dissenting.)

The distinction respondent draws is one of degree and does not alter our fundamental inquiry. ■ "When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law 'in

(*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

its primary sense of opportunity to be heard and to defend [his] substantive right.' [Citation.] When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." (*Bouie* v. *Columbia, supra,* 378 U.S. at pp. 354-355 [12 L.Ed.2d at p. 900].)

In *Bouie,* the defendants were denied the right to defend against conviction on the ground that no law penalized their conduct at the time they acted. ▮ Here, retroactive application of *Anderson* would deny petitioner the right to defend against a possible death sentence on the ground that without proof of intent the law did not categorize his conduct as a capital offense at the time he acted. "The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." (*Lindsey* v. *Washington, supra,* 301 U.S. at pp. 400-401 [81 L.Ed. at pp. 1185-1186].)

## CONCLUSION

An accused may not be deprived of any defense against imposition of the state's most severe sanction if the law at the time of the crime permitted such a defense or did not prescribe death for the act committed. As Justice Holmes has said: "Although it is not likely a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." (*McBoyle* v. *United States* (1931) 283 U.S. 25, 27 [75 L.Ed. 816, 818, 51 S.Ct. 340].) " 'It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. . . .' " (*Bouie* v. *Columbia, supra,* 378 U.S. at p. 363 [12 L.Ed.2d at p. 905], quoting Chief Justice Marshall in *United States* v. *Wiltberger* (1820) 5 Wheat 76, 96 [5 L.Ed 37, 42]; see also *Marks* v. *United States, supra,* 430 U.S. at pp. 194-195 [51 L.Ed.2d at pp. 266-267]; *Keeler* v. *Superior Court, supra,* 2 Cal.3d at p. 635.)

As a humane nation, we take special care when an individual, no matter how culpable, may face the ultimate sanction of the death penalty: "There is no question that death as a punishment is unique in its severity and irrevocability. [Citations.] When a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed. [Cita-

tions.]" (*Gregg* v. *Georgia* (1976) 428 U.S. 153, 187 [49 L.Ed.2d 859, 882, 96 S.Ct. 2909].) We so observe and insure.

## DISPOSITION

Petition for writ of habeas corpus is granted. The trial court is directed to instruct in conformance with *Carlos* v. *Superior Court, supra,* 35 Cal.3d at pages 153-154.

Klein, P. J., and Danielson, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 19, 1989.