[No. B032684. Second Dist., Div. Three. Aug. 2, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS DAMAR EDWARDS, Defendant and Appellant.

**COUNSEL**

Philip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edward T. Fogel, Carol Wendelin Pollack and Alison Braun, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### ARABIAN, J.—

#### INTRODUCTION

In *In re Baert* (1988) 205 Cal.App.3d 514 [252 Cal.Rptr. 418] (rev. den Jan. 19, 1989), cert. den. *sub nom. California* v. *Baert* (1989) __ U.S. __ [106 L.Ed.2d 589, 109 S.Ct. 3242], we concluded ex post facto principles require that in all first degree murder cases involving felony-based special circumstances (Pen. Code, § 190.2, subd. (a)(17)) and arising prior to the finality of *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306], the prosecution must prove an intent to kill as mandated by *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]. We now determine that when the trial court has failed to instruct consistent with these holdings, "the appropriate standard [of review] is the 'harmless beyond a reasonable doubt' test for federal constitutional errors. (See *Chapman* v. *California* (1967) 386 U.S. 18, 21 [].) Applying that test here, we also conclude beyond a reasonable doubt the jury would not have reached a more favorable verdict had it been properly instructed." (*People* v. *Lee* (1987) 43 Cal.3d 666, 669 [238 Cal.Rptr. 406, 738 P.2d 752].)

#### PROCEDURAL AND FACTUAL STATEMENT

Defendant Dennis Damar Edwards was charged with the murder and robbery of Jeffrey Randle El. On the evening of May 2, 1987, defendant was at his mother's home on Jayson Court in Claremont with his friend Byron Rouzan. Twice during the evening, they went outside and visited with a friend and neighbor, Claudia Vigil. The second time, about 1 a.m., Rouzan was carrying a .38 caliber handgun given him by defendant, who kept it under a dresser in his mother's house. Rouzan laid the gun on the sidewalk, and defendant later retrieved it and took it into the house.

Between approximately 1:30 and 2:30, Randle El drove onto Jayson Court in his red Camaro. Defendant spoke with him briefly, went into his house, and then crossed Jayson Court into an alley where Randle El had moved his vehicle. Defendant returned to where Rouzan and Vigil were

standing in the street and asked Rouzan if he wanted to go to Los Angeles. Rouzan declined and left to go home about 3 a.m.

About 3:15 a.m., Vernon Waddel, another resident of Jayson Court, heard a single gunshot. Claudia Vigil also heard a loud noise around the same time. About 6:50 a.m., Claremont Police Officer Christopher Bradley found the body of Randle El in the alley across from Jayson Court. A large pool of blood surrounded his head; and Bradley discovered a fence stake with blood on one end about 15 feet away.

About 4 a.m., defendant arrived in Los Angeles at the home of his sometime girlfriend, Joanne Thompson, in Randle El's car. He told Thompson that he had given the owner two $20 rocks of cocaine to use it, although the next day he told another individual he owned the vehicle. In a later search of Thompson's house, police found Randle El's wallet, identification, and credit cards in a dresser drawer used by defendant.

An autopsy revealed that Randle El had died of a gunshot wound from a .38 or .357 caliber bullet. The bullet had entered his left eye and traveled downward through his skull, lodging behind the left ear. According to the coroner, this trajectory indicated his head had been on a level plane looking forward when the shot was fired. She also found stippling around the left eye, indicating the victim had been shot at close range. Further examination of the body revealed no defensive wounds or other evidence of an attempt to struggle or to intercept the bullet.

About 2 a.m. May 5, Los Angeles police arrested defendant driving Randle El's Camaro after stopping him for a traffic violation. They found bloodstains on the back of the driver's seat and the mounting bolt, which later chemical analysis determined was consistent with the victim's blood type but not defendant's. The same was true of the blood found on the fence stake at the scene of the murder; and defendant's pants were also stained with human blood.

After his arrest, defendant waived his rights and gave a statement to police. He said that the victim had let him borrow his car for two $20 rocks of cocaine, and he then drove to Joanne Thompson's house in Los Angeles about 4 o'clock. Randle El was alive when he left, and he did not know how his wallet came to be found in Thompson's house. There had been no blood in the car when he took it, and the blood on his pants was from a dogfight. He denied having a gun the night of the killing.

Cathy Pedroza, a girlfriend of the victim, testified that he was working full-time at the time of his death and had $280 in his possession that night.

He was especially proud of his car and never loaned it to anyone. She had seen no bloodstains on it prior to May 3. Yvette Williams, another girlfriend, testified the victim occasionally let her borrow his car for short periods but did not loan it to anyone else. Ms. Williams also knew defendant and recalled an incident in which he had displayed a gun after allegedly being cheated in a drug transaction. To her knowledge, the victim occasionally used cocaine but never loaned his car in exchange for narcotics.

Defendant was charged with first degree murder (Pen. Code, § 187, subd. (a)) and robbery (Pen. Code, § 211). The information further alleged that the murder was perpetrated while defendant was engaged in committing the robbery (Pen. Code, § 190.2, subd. (a)(17)(i)), that he personally used a handgun during the commission of the crimes (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.5), and that "with the intent to inflict injury, [he] personally inflicted great bodily injury" upon the victim (Pen. Code, § 1203.075). At trial, he requested the jury be instructed consistent with *Carlos* v. *Superior Court, supra,* but the court declined to do so. The jury found defendant guilty as charged. As to each count, it also found true the allegations of gun use and personal infliction of great bodily injury. The court imposed a sentence of life in prison without possibility of parole on the murder charge and a consecutive term of three years for the robbery. Defendant filed a timely notice of appeal.

## DISCUSSION

Since the murder occurred prior to the California Supreme Court's decision in *People* v. *Anderson, supra,* 43 Cal.3d 1104, the trial court erred in failing to instruct the jury on the issue of intent in accordance with the holding of *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131. (*In re Baert, supra,* 205 Cal.App.3d at p. 516.) Nevertheless, instructional error, even of this magnitude, does not mandate reversal. "[A] reversal-per-se standard is reserved for *fundamental* trial errors, such as the introduction of a coerced confession or the complete denial of counsel, which either 'aborted the basic trial process [citation], or denied it altogether [citation].' [Citation.] . . . [A]side from errors affecting fundamental rights, 'there is a strong presumption that any other errors that might have occurred are subject to harmless error analysis.' [Citation.]" (*People* v. *Lee, supra,* 43 Cal.3d at pp. 674-675; see *Rose* v. *Clark* (1986) 478 U.S. 570, 576-577 [92 L.Ed.2d 460, 469-470, 106 S.Ct. 3101].)

In *People* v. *Lee, supra,* the California Supreme Court definitively delineated the appropriate measure of such instructional error after a thorough examination of recent United States Supreme Court decisions, principally *Rose* v. *Clark, supra,* 478 U.S. 570, and *Pope* v. *Illinois* (1987) 481 U.S. 497

[95 L.Ed.2d 439, 107 S.Ct. 1918]. Writing for a unanimous court, Chief Justice Lucas explained that an error in charging the jury may not necessarily remove an essential element from its consideration. In *Lee,* "the jury received contradictory, and partially inaccurate, instructions regarding the element of specific intent to kill required to sustain a verdict of attempted murder." (*People* v. *Lee, supra,* 43 Cal.3d at p. 668; see *People* v. *Ratliff* (1986) 41 Cal.3d 675, 695-696 [224 Cal.Rptr. 705, 715 P.2d 665].) Nevertheless, in that case, "as in *Clark,* the conflicting instructions did not affect the composition of the record nor preclude the admission of relevant evidence bearing on the intent issue." (*People* v. *Lee, supra,* 43 Cal.3d at pp. 675-676.)

In *Rose* v. *Clark, supra,* the court elucidated the point thusly: "When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. [Citation.] In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury. [Citation.] In that event the erroneous instruction is simply superfluous: the jury has found, in Winship's [*In re Winship* (1970) 397 U.S. 358 (25 L.Ed.2d 368, 90 S.Ct. 1068)] words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt. [Citations.]" (*Rose* v. *Clark, supra,* 478 U.S. at pp. 580-581 [92 L.Ed.2d at p. 472].) It then follows that "in the absence of error that renders a trial fundamentally unfair, . . . a conviction should be affirmed '[w]here a reviewing court can find that the record developed at trial established guilt beyond a reasonable doubt. . . .' [Citation.]" (*Pope* v. *Illinois, supra,* 481 U.S. at pp. 502-503 [95 L.Ed.2d at p. 446].)

■ In the case before us, the instructional error did not remove the factual determination of intentionality from the jury's consideration. (See *People* v. *Garcia* (1984) 36 Cal.3d 539, 554 [205 Cal.Rptr. 265, 684 P.2d 826], cert. den. *sub nom. California* v. *Garcia* (1985) 469 U.S. 1229 [84 L.Ed.2d 366, 105 S.Ct. 1229]; see also *People* v. *Lee, supra,* 43 Cal.3d at pp. 673-674.) Rather, the prosecution offered either of two theories to sustain a finding of first degree murder: one, that defendant committed a willful, deliberate, and premeditated, i.e., intentional, killing or, alternatively, that he killed the victim while engaged in the commission of a felony inherently dangerous to human life.

The court instructed consistent with both theories as well as second degree murder and involuntary manslaughter. The jury found defendant guilty of first degree murder in that he "did willfully, unlawfully, and with malice aforethought" kill the victim. The "malice" instruction required a finding of "an intention unlawfully to kill a human being." (See *People* v.

*Walker* (1988) 47 Cal.3d 605, 633 [253 Cal.Rptr. 863, 765 P.2d 70]; *People v. Burgener* (1986) 41 Cal.3d 505, 536-538 [224 Cal.Rptr. 112, 714 P.2d 1251]; see also *People v. Miranda* (1987) 44 Cal.3d 57, 89-90 [241 Cal.Rptr. 594, 744 P.2d 1127], cert. den. *sub nom. Miranda v. California* (1988) 486 U.S. 1038 [100 L.Ed.2d 613, 108 S.Ct. 2026], reh. den. 487 U.S. 1246 [101 L.Ed.2d 956, 109 S.Ct. 4].) The jury also specifically found that defendant, "with intent to inflict such injury, personally inflicted great bodily injury upon JEFFREY RANDLE EL . . . ." As discussed below, the facts of the case were such that the jury must have understood any intentional "injury" to be a necessarily fatal one, particularly in light of the additional finding that defendant personally used a handgun in the commission of the crimes. (See *People v. Adcox* (1988) 47 Cal.3d 207, 247 [253 Cal.Rptr. 55, 763 P.2d 906].)

■ "[I]n some circumstances it is possible to determine that although [a required] instruction . . . was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a [more favorable] finding . . . has been rejected by the jury." (*People v. Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; see *People v. Garrison* (1989) 47 Cal.3d 746, 789-790 [254 Cal.Rptr. 257, 765 P.2d 419]; *People v. Phillips* (1985) 41 Cal.3d 29, 58 [222 Cal.Rptr. 127, 711 P.2d 423]; see also *People v. Lee, supra,* 43 Cal.3d at p. 675, fn. 1.)

■ Furthermore, the controversy in this case focused on who did the killing, not how it was perpetrated. The uncontroverted evidence established that the victim was shot through the left eye at "close range" while sitting in his car, and death occurred either "instantaneous[ly]" or within "half an hour maximum." The physical evidence gave no indication of a struggle or other defensive action on his part. Although defendant did not offer a specific alibi, he essentially proffered a "someone else did it" defense. Thus, the only substantive question for the jury was the identity of the person who committed this brutal, calculated murder. (Cf. *People v. Ratliff, supra,* 41 Cal.3d at p. 696 (record contained some evidence of self-defense); *People v. Johnson* (1981) 30 Cal.3d 444, 449 [179 Cal.Rptr. 209, 637 P.2d 676] (same); see also *People v. Lee, supra,* 43 Cal.3d at p. 679.) After due consideration of the evidence, they not only resolved this pivotal issue against defendant but also implicitly confirmed the obvious: that he intentionally inflicted the mortal wound.

Under such circumstances, we conclude with full confidence that " 'no reasonable juror, properly instructed on the issue of intent, could have entertained a reasonable doubt on this question. Consequently, we hold the instructional error is harmless beyond a reasonable doubt and is not grounds for reversal of [defendant's] conviction.' " (*Ibid.*)

## DISPOSITION

The judgment of conviction is affirmed.

Danielson, Acting P. J., and Croskey, J., concurred.