Filed 5/23/14  P. v. Martinez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARMANDO MARTINEZ<br><br>    Defendant and Appellant. | B244067<br><br>(Los Angeles County<br>Super. Ct. No. KA095806) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed as modified.

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

―――――――――

Armando Martinez (appellant) appeals from the judgment following a jury trial in which he was convicted of second degree robbery. (Pen. Code, § 211; count 4.)[1] At sentencing, appellant was placed on formal probation for a period of five years on condition, inter alia, that he serve 365 days in the county jail, with an award of presentence credits and orders he comply with certain conditions of probation designed to halt his marijuana use.

## CONTENTIONS

He contends that the trial court improperly failed to give a sua sponte jury instruction as to a lesser-included offense of grand theft and that it should have defined the term "force" sua sponte when instructing on the elements of robbery in CALCRIM No. 1600. In his final contention, he asserts he is entitled to one additional day of section 2900.5 conduct credit.

Only appellant's final contention has merit.

## BACKGROUND

1. *The charges and verdict.*

The information charged appellant with kidnapping to commit rape (§ 209, subd. (b)(1); count 1), simple kidnapping (§ 207, subd. (a); count 2), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 3), second degree robbery (§ 211; count 4), sexual battery by restraint (§ 243.4, subd. (a); count 5) and assault to commit a felony, violations of rape, sodomy, oral copulation "and a violation of sections 264.1, 288 and 289" (§ 220, subd. (a)(1); count 6). At the close of the evidence, the trial court instructed the jury as to the above offenses, as well as to lesser included offenses of imprisonment by violence or menace, false imprisonment without violence or duress, battery and assault. The trial court instructed the jury that simple theft or larceny was a lesser included offense of robbery (CALCRIM No. 1800, concerning petty theft within the meaning of section 484, subdivision (a)).

The jury returned a verdict of guilty as to only one offense, the robbery.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

2. *The trial evidence.*

We view the evidence in the light most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

a. *The People's case-in-chief.*

At about 10:30 a.m. or 11:30 a.m. on October 13, 2011, B.D., age 50, purchased a few groceries at a market on Valley Boulevard and walked down Garvey Avenue.[2] It took her 12 minutes to walk home from the market to the apartment where she lived with her daughter and son-in-law, Jose. That stretch of Garvey Avenue is frequented by prostitutes. B.D. was wearing jeans and a tank top and was carrying a small bag of groceries.

As she walked along the sidewalk, appellant approached in his van and spoke to her through the van's passenger window. Appellant said something about being bored and inquired as to B.D.'s marital status. B.D. replied she was married, then ignored him and continued home. Appellant waylaid her down the street. He had parked his van and was on foot. After a comment, he put his arm around her, hugged her and pressed his finger or an instrument she believed might be a knife into her abdomen, telling her to act as if she was his girlfriend. He "took [her] inside the van" and said he was giving her a ride. Once inside, she attempted to open the passenger door, but could not get the door open. Appellant walked around the van and entered the driver's seat.

Appellant started driving. Appellant smelled of marijuana and looked "strange" or "drugged." Appellant said nothing and immediately took his penis out of his shorts and masturbated. She was scared and said, "Help me," and "I am not a whore." He grabbed her breast, and she pushed his hand away.

B.D. concluded appellant was going to rape and kill her. He sped up, and they were near a freeway onramp. In order to prevent him from taking her onto the freeway, B.D. told him she would have sex with him. She said they should go to her apartment "to do it" and that her son-in-law might or might not be there. At trial, she explained she had entered the van and started telling appellant she would have sex with him because she was afraid.

---

[2]     At the trial, B.D. testified with the aid of a Spanish-to-English interpreter.

She wanted to persuade him she would have sex with him so that she could direct him to a location near her apartment. She hoped that once appellant stopped the van, she could get out.

When they approached the area near her apartment, she told appellant there was a dark tunnel nearby, and they could "do it there." Appellant slowed his van near the tunnel and unlocked the "latch" on B.D.'s door. B.D. opened the van's passenger door, grabbed her cell phone and told him, "I'm going to call the police." Appellant grabbed the cell phone from her. She explained he did not merely pluck it from her hand. She testified, "We were kind of struggling and I hit him" with one of the yogurt containers in her grocery bag. Appellant continued to struggle with her in order to get possession of her cell phone. She was yelling, "Give me my phone," and telling him she was going to telephone 9-1-1.

She got out of the car, and appellant drove off with B.D.'s cell phone. The container of Lala strawberry-banana yogurt she threw at him remained in the van.

She ran home. She was very upset. Her son-in-law Jose tried to locate appellant on his bicycle. An hour and a half following the assault, B.D.'s daughter telephoned the police.

After B.D. made a police report, Jose, the police and B.D. contacted appellant on B.D.'s cell phone. Appellant was arrested when he arrived at a meeting point to return B.D.'s cell phone. Upon arrest, B.D.'s cell phone, some marijuana and a pair of wirecutters were recovered from appellant's van. A container of Lala strawberry-banana yogurt was sitting on the van's middle seat.

At trial, B.D. denied being a prostitute, and previously had told the police officers she never engaged in prostitution. During cross-examination, B.D. agreed appellant had grabbed part of her cell phone, and at the same time, she had her hand on it, pulling on another part of the cell phone. Appellant then pulled the cell phone right out of her hand. Appellant did not hit her on her body. She then got out of the van, she just stood there feeling dumb and yelling at appellant.

4

b. *Appellant's statement to the police.*

The day after his arrest, after a *Miranda* waiver (*Miranda v. Arizona* (1966) 384 U.S. 436), appellant made a statement to police officers. The officers inquired why appellant believed he had been arrested. He replied it was because he had "disrespected" B.D. by touching her and talking to her in a way he was not supposed to. He admitted smoking marijuana prior to his contact with B.D. He claimed he and B.D. conversed, and she voluntarily got into his car. He interpreted what B.D. did and said as giving him mixed signals about whether she would have sex with him. He told the officer that once B.D. directed him to a location near her residence, she opened her door, started screaming for help and said she was going to "call the cops." He panicked and "took her phone," then left.

He made conflicting statements concerning whether he used the wirecutters to get B.D. into the van. He admitted he had stopped his van to speak to B.D. because he was interested in having sex with her. But he claimed he never would have forced B.D. to have sex with him.

3. *The defense.*

Appellant called a psychologist as a defense witness. The psychologist testified that a person who is high on marijuana is likely to experience impairments in how they perceive the environment, in memory and in measuring the passage of time. Smoking marijuana can also impair social judgment and make a person more impulsive.

Appellant testified on his own behalf. He said that on the morning of October 13, 2011, he smoked seven grams of marijuana. He drove to Garvey Avenue to find a prostitute, although he only had a debit card with him and no cash. Appellant claimed he spoke to B.D. for a few moments, then B.D. entered his van. He denied he had locked the passenger door in order to prevent her from getting out. B.D. had refused his offer to "hook up." He tried to persuade her that they should have some fun. Then she told him, "Pull over," and said she would have "sex with [him]." She directed him to a nearby location, but refused to let him touch her breasts. He pulled over as directed.

5

As he slowed his van, B.D. took out her cell phone and said she was going to call the police. He "freaked out," and "grabbed the phone and [took] it away from her." He claimed there was no struggle over the phone -- he had it out of her hand before she had a chance to grab it. He testified, "I just took the phone. She tried to grab it but I already grabbed it." The prosecutor asked, "So you grabbed that phone by force out of her hand?" Appellant replied, "Yes, ma'am." The prosecutor said, "Because she was going to call the police," and appellant said, "Yes, ma'am."[3]

Then appellant quickly drove off, keeping the cell phone.

He claimed he later attempted to return the cell phone because he felt bad. But he also admitted he went to the designated meeting place thinking he would return the phone. He had believed that by contacting him, B.D. was giving him the signal she was interested in having sex with him. He claimed his marijuana use left him confused, and his thinking processes had been slow. He denied remembering ever having the wirecutters in his hand and claimed using the wirecutters to force B.D. into the car was not something he ever would have done. He said he never would have forced B.D. to have sex with him.

During recross-examination, appellant admitted he had become aware in the van that his conduct had frightened B.D.

---

[3] The colloquy was as follows: "Q. [The prosecutor:] What happened? [¶] A. [Appellant:] She opened the door and pulled out her cell phone and said, 'I'm going to call the police.' [¶] Q. Okay. [¶] So you stopped the car and she immediately pulled out her cell phone and said she was calling the police? [¶] A. Yes, Ma'am. [¶] Q. And you immediately grabbed that phone, snatched it out of her hand? [¶] A. Yes, Ma'am. [¶] Q. In fact, she tried to keep her phone and you struggled for it? [¶] A. No, Ma'am. I just took the phone. She tried to grab it but I already grabbed it. [¶] Q. So you grabbed that phone by force out of her hand? [¶] A. Yes, Ma'am. [¶] Q. Because she was going to call the police? [¶] A. Yes, Ma'am." Appellant claimed, "I just did a reaction, just grabbed the phone so she wouldn't call the police." The prosecutor asked appellant whether after B.D. got out of the van, she had asked for the return of her telephone, and he replied in the affirmative.

6

## DISCUSSION

1. *The trial court erred by failing to charge the jury sua sponte as to a lesser included offense of grand theft from the person.*

a. *The trial court's instructional duties.*

" '[E]ven absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.  This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' (*People v. Birks* (1998) 19 Cal.4th 108, 112 . . . .)  '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.  Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." [Citations.]' (*Id.* at p. 119.)  '. . . [A] court is not obliged to instruct on theories that have no such evidentiary support.' ([*People v*.] *Breverman* [(1998)] 19 Cal.4th [142,] 162 [(*Breverman*)].)" (*People v. Smith* (2013) 57 Cal.4th 232, 239.)

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.  (§ 211.)[4]  The difference between robbery and theft is the element that the

---

[4]     The jury was instructed as to robbery with CALCRIM No. 1600, as follows:  "The defendant is charged in Count 4 with robbery in violation of Penal Code section 211.  [¶] To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1.  The defendant took property that was not his own; [¶] 2.  The property was taken from another person's possession and immediate presence; [¶] 3.  The property was taken against that person's will; [¶] 4.  The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 5.  When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property.  [¶]  The defendant's intent to take the property must have been formed before or during the time he used force or fear.  If the defendant did not form this required intent until after using the force or fear, then he did

7

property be removed from the victim by means of force or fear. (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256 (*Burns*).)

  b. *The analysis*.

There is no dispute that the offense of grand theft from the person (§ 487, subdivision (c)), can be a lesser included offense to robbery, just as simple theft or larceny (§ 484) is a lesser offense to both robbery (§ 211) and grand theft from the person (§ 487, subd. (c)). Grand theft from the person is a form of larceny or theft where the property is in some way physically attached to the person and removed from the victim's personal presence as the item is in contact with the person. No force is required. (*People v. Huggins* (1997) 51 Cal.App.4th 1654, 1656-1657; *People v. Williams* (1992) 9 Cal.App.4th 1465, 1472.)

---

not commit robbery. [¶] If you find the defendant guilty of robbery, it is robbery of the second degree. [¶] A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short. [¶] The property taken can be of any value, however slight. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person. [¶] Fear, as used here, means fear of injury to the person himself or herself. [¶] Property is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or fear. [¶] An act is done against a person's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily and know the nature of the act.

The jury was also given the jury instruction, CALCRIM No. 1800, concerning petty theft, as a lesser included offense to robbery.

"The crime of petty theft in violation of Penal Code section 484 is a lesser crime of robbery as charged in Count 4. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's consent; [¶] 3. When the defendant took the property he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property; [¶] AND [¶] 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief. [¶] For petty theft, the property taken can be of any value, no matter how slight."

8

Here, the trial court charged the jury as to robbery and simple theft or larceny, but did not charge the jury as to larceny from the person, i.e., grand theft from the person in violation of section 487, subdivision (c).

The contention appellant raises is identical to that discussed and rejected in *Burns, supra*, 172 Cal.App.4th 1251. Notwithstanding that our trial court acted cautiously and instructed on simple theft, the evidence is not substantial in supporting an instruction on any form of larceny. The court in *Burns* discussed the necessity of giving the grand theft instruction in the context of a purse snatch. It reviewed the case law, in critical parts the same decisions appellant relies on here, and concluded, "where a person wrests away personal property from another person, who resists the effort to do so, the crime is robbery, not merely theft." (*Id.* at p. 1257.) For robbery, something more is required than just the quantum of force necessary to accomplish the mere seizing of the property. (*Id*. at p. 1259; see also *People v. Anderson* (2011) 51 Cal.4th 989, 995-996 (*Anderson* II) [citing this proposition and *Burns* with approval].) The determinative factor is the amount of force used, and all the force required to make the theft a robbery is " ' "such force as is actually sufficient to overcome the victim's resistance." ' " (*Ibid*; *People v. Lescallett* (1981) 123 Cal.App.3d 487, 491.)

In the instant case, B.D. described how after she took out her cell phone, appellant grabbed for it. Once appellant got his hand on it, both she and he were pulling on the phone at the same time, then they struggled over it. Appellant was able to wrest it away from her. Then before or after she got out of the van, she threw the yogurt container at him in an effort to recover her phone. As he pulled off in the van, she was standing outside screaming at him to return her phone to her. Appellant admitted at least some of these facts in his own testimony, testifying she was holding the cell phone in her hand when he forcefully wrest it right out of her hand. After he had possession of the cell phone, she continued to grab for it. He agreed even after B.D. left the van, she was yelling for the cell phone's return. With this evidence, there was no error in failing sua sponte to give a lesser included offense instruction on grand theft from the person. The evidence was not substantial in demonstrating simple larceny or grand theft from the person. The

9

evidence does not support a reasonable inference appellant obtained the telephone peaceably when it was in contact with B.D.'s person without the use of force.

Also theft becomes robbery if the perpetrator peaceably gains possession but resorts to force or fear while carrying away the loot. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8; see also *People v. Anderson*, *supra*, 51 Cal.4th at pp. 995-996.) The facts here indicate B.D. initially tried to retain control of her cell phone and grab it back. But she then desisted in seeking to obtain a return of her phone because she was frightened about what appellant might do to her if she remained in the van.

There was no error in failing to charge the jury sua sponte as to a lesser included offense of grand theft from the person.

Furthermore, even if the facts here supported instructions on grand theft from the person and petty theft, appellant is not entitled to a reversal. Any error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to a defendant under other properly given instructions. (*People v. Beames* (2007) 40 Cal.4th 907, 928.) While any instruction on larceny was unnecessary, the jury was charged with CALCRIM No. 1800, which set out all the elements of simple larceny. By determining appellant was guilty of the robbery, in lieu of petty theft, the jury necessarily determined that force or fear was used to secure B.D.'s cell phone. By returning the verdict of guilty of robbery, the jury necessarily resolved the issue of the use or force or fear against appellant.

2. *The trial court failed sua sponte to define the term "force" in its instructions to the jury.*

Appellant contends the trial court had the additional duty to instruct on the definition of "force," since that word has a technical, legal meaning necessary to the jury's understanding of whether appellant committed robbery or grand theft from the person. The contention also lacks merit.

In *People v. Morehead* (2011) 191 Cal.App.4th 765 (*Morehead*), the court set out the relevant legal principles, as follows.

" ' "[T]he trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case … is not always satisfied by a mere reading of wholly correct, requested instructions." ' " (*People v. Miller* (1999) 69 Cal.App.4th 190, 207.) ' "[T]he trial court has a *sua sponte* duty to give explanatory instructions even in the absence of a request when the terms in an instruction 'have a "technical meaning peculiar to the law." ' [Citations.] No such duty is imposed when the terms 'are commonly understood by those familiar with the English language. . . .' " ' " (*Ibid.*; see also [*People v.*] *Anderson* [( 1966)] 64 Cal.2d [633,] 639 ['The law is settled that when terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required.'].)" (*Morehead*, *supra*, 191 Cal.App.4th at p. 687.)

" 'The trial court must instruct even without request on the general principles of law relevant to and governing the case . . . [including] instructions on all of the elements of a charged offense.' (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311, citation omitted.) Once the court has instructed on the general principles of law, a defendant must request additional instructions if he or she believes amplification or explanation is necessary. (*People v. Maury* (2003) 30 Cal.4th 342, 425–426 (*Maury*); *People v. Anderson*[, *supra*,] 64 Cal.2d [at p.] 639. . . .)" (*Morehead*, *supra*, 191 Cal.App.4th at pp. 772-773.)

At the outset, we hold there was a forfeiture. By charging the jury with the instruction in CALCRIM No. 1600, concerning robbery, the trial court advised the jury of all the legal principles openly and closely related to the elements of robbery. (*People v. Boyer* (2006) 38 Cal.4th 412, 468-469 [a trial court must instruct on the general principles of law openly and closely connected with the case and necessary for the jury's understanding of the case]. If appellant was concerned with the jury's ability to discern whether the force used was too slight to constitute robbery, it was incumbent upon him to request a further instruction. When a defendant has failed to request an amplification or explanation of instructions, error cannot be predicated upon the trial court's failure to give the instruction on its own motion.

In any event, it is settled that the terms force and fear as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors. (*People v. Anderson, supra,* 64 Cal.2d at p. 640; cited for this proposition in *People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026 [the term force need not be defined in a prosecution for forcible rape; there is no technical meaning peculiar to the law in that offense].) Accordingly, no further jury instruction defining force was required. The decision in *People v. Anderson*, *supra*, 64 Cal.2d 633 was filed over forty years ago. However, that does not mean it has lost its precedential value. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *In re Baert* (1988) 205 Cal.App.3d 514, 520, fn. 2.) The court in *Anderson* II, *supra* 51 Cal.4th at page 986, did not change this well-established rule regarding the necessity of charging the jury as to force when it said in *dicta* robbery requires that "the perpetrator exert some quantum of force in excess of that 'necessary to accomplish the mere seizing of the property.' "

3. *Ineffective assistance of trial counsel.*

Appellant contends trial counsel's failure to request a jury instruction defining the element of "force" constituted the ineffective assistance of trial counsel.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.] (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.)

There is no deficit performance here.

Grand theft may be charged in the discretion of the prosecutor where there is theft of property of any value "from the person," or the value of the property exceeds $950. (§ 487, subds. (a) & (c).) Grand theft is an alternate felony-misdemeanor punishable by a year in the county jail or, pursuant to section 1170, subdivision (h), by imprisonment in state prison or in a county jail for 16 months, two or three years. (§ 489, as amended by

12

Stats. 2011, ch.15, § 371, eff. Apr. 4, 2011, operative Oct. 1, 2011.) Section 484 defines simple theft or larceny. The punishment for petty theft is a fine not exceeding $1,000 or by imprisonment in a county jail not exceeding six months or both. (§ 490.)

As we indicated *ante* there is no substantial evidence of a lack of force to support jury instructions on simple larceny and grand theft from the person. As the jury determined the issue of force against appellant, appellant cannot show prejudice, i.e., that giving the instruction would have resulted in a different outcome. Thus, his claim of ineffective trial counsel also fails.

In any event, even if trial counsel should have made the request, this one failure would not secure a reversal for appellant. Trial counsel focused on the most serious of the charges lodged against appellant and ably managed to obtain a complete acquittal of the many and serious sex-related offenses. Appellant can hardly complain about trial counsel's representation when the results of her representation permitted him to walk away after this trial with only the one robbery conviction and a grant of formal probation. Her trial performance was near miraculous.

4. *Section 2900.5 conduct credit.*

Appellant contends he is entitled to one additional day of presentence conduct credit. The Attorney General agrees the point has merit, and so do we.

At sentencing, appellant was granted 337 days of section 2900.5 presentence credit, consisting of 294 days of custody credit and 43 days of conduct credit.

Appellant was arrested on October 13, 2011, and was sentenced on August 6, 2012, making his actual custody confinement 294 days. His conduct credit is computed at 15 percent as the robbery offense is a violent felony. (§§ 667.5, subd. (c)(9), 2933.1.) When we multiply 294 days by 15 percent, we obtain a result of 44 days of conduct credit. Thus, appellant was entitled to 338 days of total section 2900.5 credit, consisting of 294 days of custody credit and 44 days of conduct credit.

We will order the additional day of conduct credit appellant requests.

## DISPOSITION

The judgment is modified to grant appellant 338 days of section 2900.5 presentence credit, consisting of 294 days of custody credit and 44 days of conduct credit.

In all other respects, the judgment is affirmed.

The trial court shall have its clerk amend the order of judgment to include the additional day of presentence conduct credit and send the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.

We concur:



KITCHING, J.



ALDRICH, J.


14