[No. G014522. Fourth Dist., Div. Three. Feb. 28, 1994.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
WILLIAM CLINTON CLARK et al., Real Parties in Interest.

**COUNSEL**

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, Richard King, Christopher J. Evans and Gregg L. Prickett, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Earley, Keller & Charton, Jack M. Earley, James G. Enright, Keith C. Monroe, Pohlson, Moorhead & Goethals and Thomas M. Goethals for Real Parties in Interest.

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, Thomas Havlena and Kevin J. Phillips, Deputy Public Defenders, as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**SILLS, P. J.**—The trial court dismissed the special circumstance allegations (Pen. Code, § 190.2, subd. (a)(17)(i) & (vii)) against the three "non-shooter defendants" on the ground that Proposition 115 could not be applied to crimes committed after its passage but before the California Supreme Court's decision in *Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978 [9 Cal.Rptr.2d 102, 831 P.2d 327] (which held Proposition 115 was effective). Because we conclude the provisions of Proposition 115 apply to crimes committed after its passage and before *Yoshisato* was decided, we grant the People's petition and direct the trial court to deny the motion to dismiss.

I

Defendants (and real parties in interest) William Clark, Eric Clark and Damian Wilson are each charged with one count of murder. According to the indictment, on October 18, 1991, codefendant Nokkuwa Ervin (who is not a party to this proceeding) entered a Comp USA computer store in Fountain Valley during regular business hours and hid inside. After the store closed, Ervin confronted the store's employees at gunpoint and took personal property from them. Meanwhile, defendants drove up in a U-Haul truck. As Ervin and defendants were beginning to remove computer equipment from the store, the mother of one of the employees arrived. Ervin shot her point blank in the back of the head, killing her.

The indictment also alleges as special circumstance allegations that the murder was committed while defendants were engaged in the commission of felonies (burglary and robbery). If these allegations are found true, defendants face a sentence of life in prison without the possibility of parole.[1]

Defendants moved under Penal Code section 995 to dismiss the special circumstance allegations on due process grounds. They argued that the law was so uncertain when the murder was committed that reasonable persons could not have known whether their actions were governed by Penal Code section 190.2 as amended by Proposition 114[2] (intent to kill required to

---

[1]The district attorney is not seeking the death penalty against these defendants. (*Clark* v. *Superior Court* (1992) 11 Cal.App.4th 455, 457, fn. 4 [14 Cal.Rptr.2d 49].)

[2]The critical provision in Proposition 114 is Penal Code section 190.2, subdivision (b), which provides: "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state

impose death penalty on one who is not the actual killer) or Proposition 115[3] (felony-murder rule applies). Defendants asserted that this uncertainty was caused, in part, because the crimes occurred during the "window period" between the date when our now superseded decision in *Yoshisato* v. *Superior Court* (Cal.App.) G010832 (which held Proposition 115 never became effective because it was in conflict with Proposition 114 which had garnered more votes) became final as to our court, and the date when the Supreme Court granted the petition for review in that case (and later held Proposition 115 was effective, notwithstanding Proposition 114). Because there is no evidence that these defendants had an intent to kill, application of the felony-murder rule under Proposition 115 would expose defendants to a greater penalty (life in prison without the possibility of parole) than that authorized by prior law and the provisions of Proposition 114.

The trial court granted the motion to dismiss. The district attorney filed a petition for writ of mandate to compel the trial court to reverse its order dismissing the special circumstance allegations. Concluding that the right to appeal was inadequate, we issued an alternative writ.[4]

## II

In our superseded opinion, we were called upon to decide whether Propositions 114 and 115, two omnibus criminal law initiatives approved by the voters at the June 1990 election, were effective. Recognizing that each initiative was drafted to completely reenact Penal Code section 190.2, and that except for certain nonsubstantive changes none of the amendments proposed by one proposition appeared in the other, we found the two propositions to be in conflict. We then held that because Proposition 114 had

---

prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraph (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true." (See 47 West's Ann. Pen. Code (1994 pocket pt.) § 190.2, p. 98.)

[3]The decisive provision in Proposition 115 is Penal Code section 190.2, subdivision (d), which provides: "Notwithstanding subdivision (c), every person not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a), which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole, in any case in which a special circumstance enumerated in paragraph (17) of subdivision (a) of this section has been found to be true under Section 190.4." (See 47 West's Ann. Pen. Code (1994 pocket pt.) § 190.2, p. 100.)

[4]Defendants and amici curiae argue that the petition should be denied because the People had an adequate remedy at law: appeal. (Pen. Code, § 1238, subd. (a)(1).) However, our issuance of the alternative writ conclusively established that the right to appeal was an inadequate remedy. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

garnered more votes than Proposition 115, Proposition 115 (and its rendition of Penal Code section 190.2) never became operative. (*Yoshisato* v. *Superior Court, supra,* G010832.) We certified our opinion for publication. (Cal. Rules of Court, rule 976(c)(1).) Our opinion was filed August 5, 1991, and became final as to this court on September 4, 1991. (Cal. Rules of Court, rule 24(a).)

On September 13, 1991, the district attorney filed a petition for review with the California Supreme Court. (Cal. Rules of Court, rule 28(b).) Review was granted on October 24, 1991. Relying on an analytical framework articulated in *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744 [274 Cal.Rptr. 787, 799 P.2d 1220], the Supreme Court stated that initiatives which are presented to the voters as "complementary or supplementary" measures should be compared provision by provision. And, it held that ". . . the provisions of the measure receiving the lower number of affirmative votes are operative so long as they do not conflict with the provisions of the measure receiving the higher number of affirmative votes, and so long as those nonconflicting provisions are severable from any that do conflict." (*Yoshisato* v. *Superior Court, supra,* 2 Cal.4th at p. 988.) After determining that Propositions 114 and 115 were complementary and not in conflict, the Supreme Court held that Proposition 115 (including the amendments to Penal Code section 190.2) was effective. (2 Cal.4th at p. 992.) The Supreme Court's opinion was filed June 25, 1992.

Against this chronological and analytical backdrop, we turn to the merits of the petition.

### III

The California Constitution expressly provides that an initiative measure approved by the voters "takes effect the day after the election." (Cal. Const., art. II, § 10, subd. (a).) Proposition 115 was approved by the voters June 5, 1990, and therefore it became effective on June 6, 1990. (See *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 286 [279 Cal.Rptr. 592, 807 P.2d 434].) Since the crimes here were committed on October 18, 1991, more than 15 months after the initiative became effective, the provisions of Proposition 115 apply to these defendants. Accordingly, defendants' motion to dismiss the special circumstance allegations should have been denied.

Defendants, however, convinced the trial court to grant the motion on the ground that Proposition 115 was not operative when these crimes were committed. They argued that until the California Supreme Court handed down its opinion in *Yoshisato*, defendants did not have notice, as required by the due process provisions of the federal and state Constitutions, that Proposition 115 was operative. They also argued that application of the provisions of the initiative to them would violate the prohibition against ex post facto laws. Neither one of these arguments can carry the day.

A

Much is made of our now superseded opinion in *Yoshisato* and the effect that the "publication" of that opinion supposedly has on this petition and defendants' due process and ex post facto arguments. Indeed, the alleged uncertainty in the law caused by the "publication" of that opinion was the only reason given by the trial court in granting the motion to dismiss.[5] We begin, therefore, by explaining why our prior opinion cannot be used as a judicial knife to emasculate the initiative's operative date.

Although we certified *Yoshisato* "for publication," and even though that opinion was printed in the advance sheets of the Official Reports, our opinion in that case was not truly "published" as that term is used in the California Constitution or the California Rules of Court. More important, it could not be relied on by a court or by someone who was contemplating a homicide. Article VI, section 14, of the state Constitution provides: "The Legislature shall provide for the prompt publication of such opinions of the Supreme Court and courts of appeal *as the Supreme Court deems appropriate*, and those opinions shall be available for publication by any person." (Italics added.) Similarly, rule 976(c)(2) of the California Rules of Court provides: "An opinion certified for publication shall not be published, and an opinion not so certified shall be published, on an order of the *Supreme Court* to that effect." (Italics added.) In short, while an appellate court may *certify* (i.e., approve) an opinion for publication, the ultimate decision as to whether the opinion shall be published rests with the Supreme Court.

When the Supreme Court grants a petition for review, as it did in *Yoshisato*, it "determines that the Court of Appeal's opinion shall not be published unless [it] order[s] otherwise." (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 709, fn. 12 [238 Cal.Rptr. 780, 739 P.2d 140].) The Supreme Court did not "order otherwise" in *Yoshisato*, and thus our opinion in that case was not "published" in the sense that it could be relied upon by prospective killers, including these

---

[5]One week after the motion to dismiss was granted, the trial court stated that, "I wished that I had been a little more explicit in my reasons for ruling as I did. I'm going to expand on that just momentarily, counsel, if you will permit me." The trial court then explained: "After my review of the law and my review of your arguments, my analysis was this: That on any given day each of us is entitled to know what conduct is forbidden by the law and what penalty we face if we violate the law. And my analysis was that in that small window of a few days that was carved out by the, at least, ambiguity that was abroad between the seeking of review and the 30-day finality of the Fourth-Third's decision, that there was that brief window of, I believe it was less than 10 days, where the defendants were not on full notice as to the potential penalty if that law were violated, and that was what persuaded the court. On that day were these individuals fully aware, did the law give notice not only of the wrongfulness of the conduct, but the penalty to be applied if they were not, and that's where I came out."

defendants. It makes no difference that there was a gap of seven weeks between the date the opinion became final as to our court (Sept. 4, 1991) and the date the Supreme Court granted the petition (Oct. 24, 1991). The case was not final when the crimes were committed (Oct. 18, 1991) or when review was granted (Cal. Rules of Court, rule 28), and thus our opinion never was the law, even though it could be found in the advance sheets. (*Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 33 [13 Cal.Rptr.2d 856, 840 P.2d 961]; cf. *Barber* v. *Superior Court* (1991) 234 Cal.App.3d 1076, 1082 [285 Cal.Rptr. 668] [appellate opinion ordered reprinted for "tracking" purposes not citable].)

Defendants argue that even if our opinion could not be relied on, the mere "publication" of the case created a window of opportunity during which no reasonable person was on notice that the provisions of Proposition 115, rather than Proposition 114, were in effect. Although the blame for this confusion is laid primarily at our feet because the Supreme Court concluded we decided *Yoshisato* incorrectly, defendants claim that the mere fact this court was confused as to the correct interpretation of Propositions 114 and 115 implies that no reasonable person could have known the effect of these two initiatives until the Supreme Court clarified the matter in June 1992. The argument is unsound.

Rule 977(a) of the California Rules of Court expressly provides that an unpublished opinion cannot be relied on by a party. To allow defendants to "rely on" our now-superseded opinion on some theory that it made the law uncertain would be to allow defendants, in a perverse way, to do precisely what the rule prohibits. In any event, our opinion in *Yoshisato* could not have contributed to any uncertainty in the law since it was never final, and never the law.

Indeed, it is this lack of finality which distinguishes *Yoshisato* from those cases where *precedent* was overturned. In *In re Baert* (1988) 205 Cal.App.3d 514 [252 Cal.Rptr. 418], the Court of Appeal refused to retroactively apply *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306] (which overruled *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]) eliminating intent to kill as an element of the felony-murder special circumstance because the "about-face in *Anderson* [was] 'an unforeseeable judicial enlargement of a criminal statute.' " (*In re Baert, supra*, 205 Cal.App.3d at p. 520.) Similarly, in *People* v. *King* (1993) 5 Cal.4th 59 [19 Cal.Rptr.2d 233, 851 P.2d 27], the California Supreme Court refused to retroactively apply its decision in that case (which overruled *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23]) because the "mere possibility that this court might reconsider its own

precedent is not the equivalent of actually overruling it." (*People* v. *King, supra,* 5 Cal.4th at p. 80.) Here, on the other hand, our opinion in *Yoshisato* was never final, and never had any precedential value. (*Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347, 351, fn. 1 [156 Cal.Rptr. 326].) Accordingly, it could not have been relied on by these defendants or anyone else.

## B

■  Defendants then contend that application of the provisions of Proposition 115 to them was unconstitutional because they had no notice that their possible acts would be subject to the greater penalty imposed by Proposition 115. Their arguments are grounded in the constitutional requirement of due process and the proscription against ex post facto laws.

Relying on the Fifth and Fourteenth Amendments to the United States Constitution, sections 7 and 15 of article I of the California Constitution, *Bouie* v. *City of Columbia* (1964) 378 U.S. 347 [12 L.Ed.2d 894, 84 S.Ct. 1697], the fact that these initiatives both amended and reenacted Penal Code section 190.2, and the fact that there were two separate versions of this section on the books in 1991 (see West's Ann. Pen. Code (1991 pocket pt.) § 190.2, pp. 41-44),[6] defendants argue that reasonable persons were forced to guess whether their proposed conduct would be subject to the harsher penalties prescribed by section 190.2 as enacted by Proposition 115 or the lesser penalties prescribed by section 190.2 as enacted by Proposition 114. As defendants put it, those who guessed right avoid the death penalty; those who guessed wrong may lose their lives.[7]

It is true that Proposition 115's amendment of Penal Code section 190.2 increased the punishment which could be imposed on these defendants, and thus due process concerns are raised. The principle on which the due process provisions are based is " 'the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties.' " (*People* v. *Wharton* (1991) 53 Cal.3d 522, 586 [280 Cal.Rptr. 631, 809 P.2d 290].)

---

[6]Interestingly, both renditions of Penal Code section 190.2 are still on the books. (See West's Ann. Pen. Code (1994 pocket pt.) § 190.2, pp. 96-100).)

[7]It should be remembered that *these* defendants do not face the death penalty. (See fn. 1, *ante,* p. 1544.) However, the seriousness of the possible penalty under Proposition 115 cannot be glossed over. As the trial judge commented at the hearing: "The court cannot overlook, I know I probably should be saying it is no different if we were talking about an extra six months on a misdemeanor, but I can't overlook the fact that these young men pursuant to that face the difference between a possible straight murder conviction and one which could keep them in prison for the rest of their lives."

Indeed, this was the very point made by the trial court in dismissing the special circumstance allegations. But *Wharton* went on to point out that, "Not all judicial interpretations of statutes having a retroactive effect are prohibited, however. The United States Supreme Court has explained that the Fifth Amendment forbids only the retroactive application of an 'unexpected' or 'unforeseeable judicial enlargement of a criminal statute.' . . . California case law is in accord." (*Ibid.*, citations omitted; *People* v. *Escobar* (1992) 3 Cal.4th 740, 752 [12 Cal.Rptr.2d 586, 837 P.2d 1100].)

Although we think our now superseded decision in *Yoshisato* was correct, nevertheless, we do not believe that the Supreme Court's decision in *Yoshisato* was "unexpected."[8] The Supreme Court had already stated (albeit in dictum) that Proposition 115 became effective June 6, 1990 (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 286), and had held that the initiative was partially retroactive. (*Id.* at pp. 301-302.) In addition, the Supreme Court had already upheld the initiative against a constitutional challenge that its passage violated the single-subject rule (Cal. Const., art. II, § 8, subd. (d)) and had upheld a portion of the initiative against a constitutional challenge that it violated the proscription against constitutional revisions through the initiative process (Cal. Const., art. XVIII, § 3). (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 349, 355 [276 Cal.Rptr. 326, 801 P.2d 1077].) Although *Tapia* and *Raven* carefully left open the possibility of challenges to the validity of Proposition 115's provisions, the fact the Supreme Court had upheld the validity of Proposition 115 against other constitutional challenges on two prior occasions would have put a reasonable person on "notice" that the initiative would possibly be upheld—at least in some respect—as to other constitutional challenges. Certainly, it cannot be said that in light of these prior decisions that the Supreme Court's decision in *Yoshisato* was "unexpected." All that could be said is that the law was "unsettled," and where the law is unsettled, ". . . we do not believe a defendant can be said to have reasonably relied on a particular outcome." (*People* v. *Carr* (1988) 204 Cal.App.3d 774, 779 [251 Cal.Rptr. 458]; *People* v. *Rhoden* (1989) 216 Cal.App.3d 1242, 1256-1257, fn. 21 [265 Cal.Rptr. 355].)

---

[8]In his dissenting opinion, Justice Mosk ably points out in three short paragraphs how the majority opinion avoided the basic constitutional question. "It is axiomatic that two provisions conflict when one authorizes what the other prohibits. That is the case here. As shown, Proposition 115's section 190.2 permits the death penalty for felony-murder/rape-by-instrument. By contrast, Proposition 114's section 190.2 bars that punishment in the same situation. [¶] Therefore, under article II, section 10(b), the following result is mandated as between the conflicting provisions: Proposition 114's section 190.2, which received a higher vote, must prevail over Proposition 115's section 190.2, which received a lower vote. [¶] The majority conclude to the contrary. In essence, they seek to avoid the mandate of article II, section 10(b) by simply denying the existence of the conflict." (*Yoshisato* v. *Superior Court, supra,* 2 Cal.4th at p. 995 (dis. opn. of Mosk, J.).)

We also do not believe that the Supreme Court's decision constituted an "unforeseeable enlargement of the scope of a criminal statute." The extent of the initiative's reach is clear: as amended by Proposition 115, Penal Code section 190.2, subdivision (d), requires imposition of the death penalty or life in prison without the possibility of parole pursuant to the felony-murder rule on one who was not the actual killer. Therefore, when these crimes were committed, the question was not what penalty was provided by Proposition 115. Rather, the question was whether Propositions 114 and 115 were in conflict under article II, section 10, subdivision (b) of the California Constitution because such a finding would render the felony-murder rule provisions of Proposition 115 inapplicable. There were two different versions of section 190.2 on the books when these crimes were committed, one of which expressly provided for the application of the felony-murder rule. Defendants were therefore "on notice" that there was a possibility a court could find that the greater punishment provisions of Proposition 115 were controlling. Thus, a later holding that the two initiatives were complementary (and the felony-murder rule was applicable) was not an "unforeseeable enlargement" of the penalty which could be imposed. This is far different than *Bouie* v. *City of Columbia*, *supra*, 378 U.S. 347 where a state supreme court interpreted a statute (prohibiting *entry* of a building after one is told not to) to make criminal those activities (the refusal to *leave* a building after one is told to) which were not clearly proscribed by the law. In *Bouie*, the law was interpreted differently than anyone would reasonably have expected. Here, the provisions of the initiative were clear and it was interpreted in a manner that was not totally unreasonable given the prior decisions concerning Proposition 115.

Finally, we are compelled to reject defendants' argument that the Supreme Court's opinion in *Yoshisato* was "unexpected" because there was no precedent for the analytical framework used by the court. To the contrary, the Supreme Court emphasized in *Yoshisato* that it was utilizing the analytical framework described in *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.*, *supra*, 51 Cal.3d 744. (*Yoshisato* v. *Superior Court*, *supra*, 2 Cal.4th at p. 988.) Accordingly, we see no constitutional prohibition to charging these defendants with special circumstance allegations under the provisions of Proposition 115.

IV

Let a peremptory writ of mandate issue directing the superior court to vacate its order granting defendants' motion to dismiss the special circumstance allegations under Penal Code section 995, and to enter a new and

different order denying the motion. All stays previously issued by this court in this case are lifted.

Sonenshine, J., and Crosby, J., concurred.