**The TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

**and Related Cross Actions.**

**Civ. No. 94–0317–B (BTM).**

United States District Court, S.D. California.

May 10, 1995.

John Leland Williams, San Francisco, CA, for The Travelers Indem. Co. of Illinois ("Travelers").

Mark A. Milstein, San Diego, CA, for Ins. Co. of North America ("INA").

Deborah Broom Pegg, and Brian I. Glicker, Universal City, CA, for defendant Assicurazioni Generali SpA Ins. Co. ("Generali").

## ORDER GRANTING IN PART AND DENYING IN PART TRAVELERS' MOTIONS FOR SUMMARY JUDGMENT

BREWSTER, District Judge.

On January 30, 1995, the above captioned matter came on regularly for hearing before the Honorable Rudi M. Brewster. After over an hour of oral argument, the matter was continued to February 17, 1995, when further argument was heard. John Leland Williams, Esq. appeared on behalf of plaintiff The Travelers Indemnity Company of Illinois ("Travelers"); Mark A. Milstein, Esq. appeared on behalf of defendant Insurance Company of North America ("INA"); and Deborah Broom Pegg, Esq. and Brian I. Glicker, Esq. appeared on behalf of defendant Assicurazioni Generali SpA Insurance Company ("Generali"). Plaintiff Travelers brings a motion for summary judgment against INA and a motion for summary judgment against Generali. The Court hereby GRANTS IN PART AND DENIES IN PART Travelers' motions for summary judgment.

### I. BACKGROUND

Three corporations—Leisure Technology, Inc., Leisure Technology of California, Inc., and Leisure Technology Corporation of Oceanside (collectively, "Leisure Technology")—were engaged in residential real estate development in Oceanside. Leisure Technology was named as a defendant in three lawsuits relevant to this case: (1) the *Finkel-*

*stein* action;[1] (2) the *Southridge* action;[2] and (3) the *Ocean Hills* action.[3]

Travelers, INA, and Generali each issued an insurance policy or policies to Leisure Technology. Generali issued a primary general liability policy. INA issued an "Excess Commercial General Liability Coverage" policy. Travelers issued two general liability policies: the first was effective March 31, 1988, to March 31, 1989; the second was effective March 31, 1989, to March 31, 1990. INA's policy was effective March 31, 1990, to March 31, 1991. Generali's policy was effective March 31, 1991, to March 31, 1992.

The *Finkelstein* action was filed on August 27, 1991, and arose from the allegedly defective construction of, and resulting damage to, a condominium complex in Oceanside. The complaint in *Finkelstein* alleged many different types of defects which allegedly resulted in many different types of damages. Plaintiffs in the *Finkelstein* action alleged that they became aware of the defects and damage on or about August 27, 1991, when they filed the action. Plaintiffs in *Finkelstein* alleged "emotional injury," *inter alia,* in their complaint.

For the *Finkelstein* action, Leisure Technology tendered its defense to all three insurers. Travelers undertook the defense with a reservation of rights. INA refused to defend. On March 26, 1993, Generali accepted defense subject to a reservation of rights. On May 7, 1993, Generali withdrew its defense. The *Finkelstein* action eventually settled. Both Travelers and INA contributed to the settlement; Generali did not.

The *Southridge* action was filed on February 19, 1993, brought by the homeowners' association for damage to the common areas of the same condominium complex at issue in *Finkelstein.* The defects and damages alleged in the complaint include defectively constructed slopes, project walls, fencing, landscaping, streets, curbs, gutters and drainage. Plaintiffs in *Southridge* alleged that they had discovered the defects within 3 years of the February 19, 1993 filing of the complaint. Leisure Technology tendered its defense to all three insurers. Travelers undertook the defense under a reservation of rights; the other two insurers refused. The *Southridge* action settled and both INA and Travelers contributed to the settlement.

The *Ocean Hills* action is a class action suit seeking damages for property damage caused by numerous defects in over 400 homes and their common areas. The complaint alleges that the damage occurred from 1988 through at least 1993. On February 7, 1994, Leisure Technology tendered defense of the *Ocean Hills* action to all three insurers. Travelers accepted defense of the suit under a reservation of rights. INA refused to defend. Generali accepted defense with a reservation of rights after this motion was filed on December 30, 1994. As of the date of filing this motion Travelers has spent $55,659.87 in defense costs, but Travelers estimates that final defense costs will exceed $1 million.

Travelers brings these motions for summary judgment for: (1) declaratory relief that Generali had the duty to defend in the *Finkelstein* action and for reimbursement of a portion of Travelers' defense costs; (2) declaratory relief that Generali had the duty to defend in the *Southridge* action and for reimbursement of a portion of Travelers' defense costs; (3) declaratory relief that Generali has the duty to defend in the ongoing *Ocean Hills* action and for reimbursement of a portion of Travelers' defense costs to date; (4) contribution by Generali towards the settlement costs of the *Finkelstein* action; (5) declaratory relief that INA had the duty to

---

1. *Finkelstein, et al. v. Leisure Technology Corp., et al.,* San Diego Superior Court Case No. 640991; *Mayer, et al. v. Leisure Technology Corp., et al.,* San Diego Superior Court Case No. EC004296; and *Ownbey, et al. v. Leisure Technology Corp. of Oceanside, et al.,* San Diego Superior Court Case No. EC004161. These actions were consolidated under the title *Finkelstein, et al. v. Leisure Technology Corp., et al.,* San Diego Superior Court Case No. 640991.

2. *Southridge Oceanside Homeowners Association v. Leisure Technology Corp. of Oceanside, et al.,* San Diego Superior Court Case No. 661427.

3. *The Ocean Hills Country Club Homeowners Association v. Leisure Technology, Inc., et al.,* San Diego Superior Court Case No. 62000.

defend in the *Finkelstein* action and for reimbursement of a portion of Travelers' defense costs; (6) declaratory relief that INA had the duty to defend in the *Southridge* action and for reimbursement of a portion of Travelers' defense costs; and (7) declaratory relief that INA has the duty to defend in the *Ocean Hills* action and for reimbursement of a portion of Travelers' defense costs.

## II. DISCUSSION

### A. Standard of Law

On a motion for summary judgment, the moving party must establish that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Summary judgment must be granted if the party responding to the motion "fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To show that summary judgment is not appropriate, the nonmoving party must set forth specific facts demonstrating a genuine issue of material fact. *Id.* Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.*

### B. Motion Against Generali

#### 1. Duty to defend in Finkelstein

The *Finkelstein* complaint alleged that the plaintiffs in *Finkelstein* became aware of the construction defects on or about the time of the filing of the complaint which was on August 7, 1991. Generali's occurrence policy was in effect from March 31, 1991, through March 31, 1992. Preliminarily, Generali accepted defense of the *Finkelstein* action, but then based on its own examination of extrinsic evidence withdrew that defense. Travelers argues that Generali had a duty to defend in *Finkelstein* because the complaint showed a potential for coverage under Generali's policy. Generali does not dispute that the complaint alleged coverage during Generali's policy, but contends that Generali's own examination of extrinsic evidence proved that in fact none of the alleged defects occurred during Generali's policy period.

The duty to defend requires an insurer to defend a suit which potentially seeks damages within the coverage of the policy. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). The burden of proof in a duty to defend case in California was made clear in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993):

> In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

*Id.* at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. An insurer must defend the entire suit against its insured, even if only some of the alleged claims are covered, "until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Horace Mann, supra*, at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792.

At issue in this motion is not so much the respective burdens of each party, but rather timing. Generali argues that it is presently capable of proving to the court that there was never any potential for coverage under Generali's policy in the *Finkelstein* action. Generali seeks to submit this proof to the court three and a half years after the action was filed.

The Court begins with the clearly established principle that "the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose, supra*, at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (quoting *Horace Mann, supra*, at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792). "Imposition of an imme-

diate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Montrose, supra*, at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (citing *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal.3d 359, 367, 165 Cal.Rptr. 799, 612 P.2d 889 (1980)). This principle dictates that even when resolution of the indemnity suit conclusively shows that no coverage existed, the duty to defend may still have existed.

Indeed, the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of the facts not in the pleadings that establish that the claim is *not* covered.

*CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986).

California law is clear that the duty to defend is measured at the outset of the litigation, not by hindsight. *Devin v. United Services Auto. Assn.*, 6 Cal.App.4th 1149, 1157, 8 Cal.Rptr.2d 263 (1992); *CNA Casualty of Ca., supra*, at 610, 222 Cal.Rptr. 276. Specifically, the duty to defend arises upon tender of defense by the insured to the insurer. *Montrose, supra*, at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. As the court in *Montrose* noted, the insured's desire for immediate defense is likely to have been a strong motive in purchasing the policy. Consequently, "California courts have been consistently solicitous of insureds' expectations on this score." *Id.* at 296, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Once the insured has tendered defense of an action in which a potential for coverage exists under the insurer's policy, the insurer's duty to defend exists and is ongoing until: (1) the action is resolved, OR (2) the insurer proves to the court in a declaratory relief action by conclusive evidence that no potential for coverage exists, OR possibly (3) the policy limits on the duty to defend have been reached. Such a rule provides incentive to the insurer to investigate claims thoroughly and expeditiously.

The Court's interpretation of the law is supported by the California Court of Appeal's opinion in *Haskel, Inc. v. Superior Court of Los Angeles*, 33 Cal.App.4th 963, 39 Cal.Rptr.2d 520 (1995). In *Haskel*, the court interpreted the California Supreme Court's opinion in *Montrose* as follows:

... if there was any potential for coverage for the administrative damage claims sought against Haskel, a duty of defense arose. If the claims asserted in the underlying action raise a potential for coverage, the insurers have a duty to provide a defense to Haskel upon tender of those claims unless and until they produce in court *undisputed* extrinsic evidence which *conclusively* establishes that there is no potential for coverage.

*Haskel* was decided after oral argument was heard in the present case, but the *Haskel* opinion merely reinforces the decision contemplated by this Court. No further argument on the application of *Haskel* to the facts of this case is necessary.

Generali asserts that California cases exist which observe that an insurer may at its own risk deny a defense based on its conclusion that coverage does not exist. The risk in these cases is that, if the insurer is wrong, the insured may later recover not only the costs of defense, but also indemnity for a resulting settlement or adverse judgment and maybe punitive damages in a bad faith action against the insurer after the conclusion of the underlying suit. This argument was expressly considered and rejected by the California Supreme Court:

[Insurer] seems to contend that the existence of an eventual remedy for the insurer's bad faith denial of a defense somehow supports restriction of the duty to defend. The contention lacks merit. The scope of the duty is distinct from the remedies available to enforce it. Obviously, any denial of coverage and defense may be erroneous, and therefore run the risk of bad faith liability. A totally separate question is what showing the insurer must make in a declaratory relief action to establish the absence of a defense duty.

*Montrose, supra*, at 304, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Generali argues that California state courts have allowed recoupment of defense costs after an insurer, who had assumed the duty to defend, proves that no potential for liability existed. In support of its contention, Generali cited *Gossard v. Ohio Casualty Group of Insurance Companies*, 29 Cal. App.4th 1660, 35 Cal.Rptr.2d 190 (1994), *rev. granted*, 37 Cal.Rptr.2d 842, 888 P.2d 236 (1995), at the oral hearing. Generali argues the logical extension of this doctrine would allow an insurer to reject the tendered defense and prove the absence of any potential for coverage at a later date in response to the insured's suit for declaratory relief.

██ Preliminarily, the Court notes that when the California Supreme Court grants a petition for review, as it did in *Gossard*, such a grant "determines that the Court of Appeal's opinion shall not be published unless [it] order[s] otherwise." *Agricultural Labor Relations Bd. v. Tex–Cal Land Management, Inc.*, 43 Cal.3d 696, 709, n. 12, 238 Cal.Rptr. 780, 739 P.2d 140 (1987). In granting review, the Supreme Court did not "order otherwise" and thus the Court of Appeal's opinion shall not be cited or relied on by a court or a party in any other action. Cal. Rules of Court, Rule 977(a). This is so even if the Court of Appeal's opinion appears in the advance sheets. *People v. Superior Court*, 22 Cal.App.4th 1541, 1547, 28 Cal. Rptr.2d 46 (1994).

Even if the Court of Appeal's opinion in *Gossard* were precedent in this case, it is distinguishable from the facts of this case. In *Gossard*, the matter in dispute was whether the complaint supported a potential for coverage under the policy. Upon the finding that the complaint did not support any such potential for coverage, the court found that the insurer never owed the duty to defend to its insured. In the present case Generali has admitted that the complaint supports a potential for coverage under its policy. Generali has thus admitted that based only on the allegations in the complaint, it would appear to owe a duty to defend.

Generali argues that a later showing of proof which negates the allegations in the complaint supporting coverage retroactively relieves the insurer of the duty to defend.

This argument does not fall within the purview of the opinion in *Gossard*. Such an argument also conflicts with the doctrine of the duty to defend as contemplated by the California Supreme Court in *Montrose*. Certainly, California courts have allowed recoupment of defense costs upon a showing that there was no duty to defend. But recoupment is only allowed in those cases where the insured has failed to uphold the insured's initial burden of proof, i.e., by showing that the underlying claim may fall within the policy coverage. The Court has found no cases which allow recoupment of defense costs upon a later proof by the insurer that although the underlying claim as alleged fell within the policy coverage, in fact the allegations were unsubstantiated. Indeed, if this were so, there would be little truth to the established principle that the duty to defend is broader than the duty to indemnify.

██ This Court concludes that the law contemplated by the California Supreme Court requires a measurement of the duty to defend at the time the insured tenders defense of the third party action to the insurer. If the complaint in the third party action reveals a potential for coverage under the insurer's policy, the insurer has a duty to defend until such time as the insurer proves to the court that actually no potential for coverage existed at the time the third party litigation was commenced. The method of proof contemplated by the California courts requires a judicial determination, not merely a showing out of court based on investigation by the insurer. If, despite a potential for coverage as alleged in the complaint, the insurer successfully proves that no potential for coverage existed, the duty to defend ceases at the time such proof is made. Such proof does not, however, retroactively delete the duty to defend as it had existed up to the point of proof. In addition, by refusing either to defend or to prove that no potential for coverage exists once a potential for coverage has been shown, the insurer exposes itself to liability for bad faith. As stated in *Montrose*, "[i]n order to avoid any possibility that a refusal to defend may subject it to eventual liability for bad faith, the insurer is well advised to seek a judicial determination

that it owes no defense." *Montrose* at 301, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Based upon the analysis above, the Court finds that Generali owed Leisure Technology the duty to defend in the *Finkelstein* action. This duty arose upon the tender of defense to Generali because the complaint fairly raised the potential for coverage under the Generali policy. Generali has not heretofore obtained adjudication on that duty and thus it continues to exist. Because the *Finkelstein* action is settled and presumably all defense costs which could be incurred have already been incurred, Generali's attempt to prove now that no coverage existed under its policy then, is moot. Generali is obligated to reimburse Travelers for some of the costs of defending the *Finkelstein* action. The Court hereby GRANTS summary adjudication to Travelers on the issues of Generali's duty to defend and to reimburse defense costs in the *Finkelstein* action.

In addition, the Court finds that Generali had the duty to defend in the *Finkelstein* action on the basis of the emotional distress allegation in the *Finkelstein* complaint. Generali contends that there was no potential for coverage of the claim because under California law emotional distress damages are not legally permitted in an action for damage to property.

In *CNA Casualty of Cal., supra,* an insurer who had refused the insured's tender of defense asserted that there was no potential for coverage under its policy because the underlying complaint did not state a cause of action for malicious prosecution. The insurer argued that since a malicious prosecution suit requires a prior termination of the earlier proceeding in favor of the party alleging malicious prosecution, the suit was legally groundless. The Court of Appeal rejected this argument. The court held that even though the insured may have had an iron-clad legal bar to the suit, it was the insurer's obligation to assert that defense for the insured because under its policy the insurer was obligated to defend actions "even if any of the allegations of the suit are groundless, false or fraudulent." *CNA Casualty of Cal., supra,* at 609 n. 4, 222 Cal.Rptr. 276.

Similar to the insurer in *CNA Casualty of Cal.,* Generali argues that because the underlying complaint does not state a legal cause of action for emotional damages, there is no potential for coverage under the policy, and Generali has no duty to defend. As in *CNA Casualty of Cal.,* Generali's policy obligates it to defend actions "even if any of the allegations of the suit are groundless, false, or fraudulent." This Court holds that application of California law as stated in *CNA Casualty of Cal.* requires Generali to defend this action. If, as Generali suggests, the complaint may have been defeated by a motion to dismiss, it was Generali's obligation to bring the motion on behalf of Leisure Technology.

In *Horace Mann, supra,* the court held that once a duty to defend attaches for any claim in a complaint, the insurer is obligated to defend against all claims in the action. *Id.* at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. Therefore, even if the claim for emotional damages did not create a duty to defend, Generali would have a duty to defend the entire complaint including the claim for emotional damages because the property claims in the complaint allege a potential coverage.

### 2. Duty to defend in Southridge

In the *Southridge* action there was no allegation of emotional distress in the underlying complaint. Therefore, the Court bases its ruling entirely on the discussion above that precludes an insurer from retroactively proving that it had no duty to defend even though that duty was supported by the underlying complaint. The Court finds that the underlying complaint in the *Southridge* action supported coverage under Generali's policy. Generali therefore had the duty to defend. As in the *Finkelstein* case, any efforts to overcome the initial showing of the duty to defend by factual proof now is too late because the *Southridge* action has been settled. Generali must reimburse Travelers for some of the costs in defending Leisure Technology in the *Southridge* action. At the hearing on February 17, 1995, the Court granted Generali ten days to lodge proof that there was never any potential for coverage in the *Southridge* action. That grant of lodge-

ment is hereby withdrawn. In light of the Court's analysis of the duty to defend discussed above, Generali's requested offer of proof is irrelevant. The Court hereby GRANTS summary adjudication of Generali's duty to defend and for reimbursement of defense costs in the settled *Southridge* action.

### 3. Duty to defend in Ocean Hills

Generali accepted the tender of defense of the ongoing *Ocean Hills* action on December 30, 1994, after this motion was filed. Leisure Technology tendered defense of the *Ocean Hills* action on February 7, 1994. Assuming Generali has a duty to defend in the *Ocean Hills* action, that duty arose on February 7, 1994.

### 4. Duty to indemnify in Finkelstein

Travelers also seeks a determination of Generali's duty to indemnify Leisure Technology in the *Finkelstein* action. The Court finds that there are genuine disputes of material facts concerning coverage which bar resolution of this matter by summary judgment at this time. Travelers' motion for summary adjudication of this issue is therefore DENIED.

### C. Motion against INA

The Court finds that the policy issued by INA is an excess liability policy. The policy terms do not contemplate or provide for a traditional duty to defend. The policy does obligate INA under certain circumstances, to reimburse the insured for the costs incurred by the insured in defending certain actions against the insured. If this clause for reimbursement of defense costs were invoked, INA would be obligated to contribute to the insured's defense costs in the same proportion that INA shares with the insured in the settlement or ultimate judgment of the underlying case.

The clause in INA's policy provides:

We have neither the right nor the duty to defend a "suit" seeking damages or to investigate or settle any claim or "suit", nor does this policy apply to "loss adjust-

ment expense", except as outlined below, or prejudgment interest arising out of any "occurrences" or offense. We shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy that we believe likely to exceed the "retained limit". In such event we and the insured shall cooperate fully.

"Loss adjustment expense" will be apportioned between you and us as follows:

a. If the amount of the judgment or settlement exceeds the amount of the "retained limit", all "loss adjustment expense" in connection therewith will be borne by the insured and us in the same proportion as the insured's and our respective obligations for payment of the judgment or settlement;

b. If the amount of the judgment or settlement does not exceed the amount of the "retained limit", or if the claim or "suit" is settled without payment of damages, the amount of the "loss adjustment expense" shall be borne solely by the insured.

This obligation to reimburse defense costs is thus only incurred if the insured itself incurs a claim loss exceeding the "retained limit."[4] In the *Finkelstein* and *Southridge* actions, the insured did not incur costs itself; costs were covered by the insured's primary insurer, Travelers. Arguably, therefore, INA's obligation to reimburse defense costs is not technically triggered in either of these cases. The *Ocean Hills* action is ongoing and has not reached the point of settlement or judgment. INA's duty to reimburse is dependent on INA's contribution to settlement or judgment. Because the *Ocean Hills* action has not yet reached the point of settlement or judgment, INA's duty to reimburse defense costs is not ripe for resolution.

Travelers argues that on equitable grounds, INA should be required to reimburse Travelers because Travelers has discharged the duty of defense of the insured. In California, "an insurer that discharges a

---

4. Leisure Technology's retained limit under the INA policy is $100,000.00.

common obligation of another insurer may seek contribution from the second insurer." *Northern Ins. Co. v. Allied Mut. Ins.*, 955 F.2d 1353, 1360 (9th Cir.1992). In the present case, however, INA had only a duty to reimburse defense costs while Travelers had a traditional duty to defend. Although these two obligations are not the same, in this case INA's duty to reimburse may be considered a lesser included common obligation.

 There are two significant differences between the two obligations. First, the duty to reimburse is triggered only after liability has been conclusively established. In contrast, the duty to defend is triggered upon the tender of defense if there is any potential for coverage. Long before liability is conclusively established, the duty to defend obligates the insurer to retain legal counsel and investigate the matter in order to properly defend its insured. Second, the duty to defend obligates the insurer to spend all resources necessary to the effective defense of the insured. There is no policy limit to the costs of defense for which an insurer with a duty to defend may be liable. In contrast, the duty to reimburse as articulated in the INA policy specifically limits the amount of defense costs which INA is obligated to pay. INA pays the same proportionate share of defense costs that it pays in settlement or judgment.

Under the circumstances of this case the Court considers Travelers' coverage of the insured's indemnity costs to be equivalent to payments by the insured for the purposes of the INA policy. The Court therefore concludes that INA has the duty to reimburse defense costs in the *Finkelstein* and *Southridge* actions in the same proportion that it contributed to settlement so long as its reimbursement does not exceed the payment made by either Generali or Travelers. The Court finds that a determination as to INA's duty to reimburse defense costs in the *Ocean Hills* action is not ripe for adjudication because that action is ongoing and has not yet resulted in settlement or judgment.

## III. CONCLUSION

The Court grants, in favor of Travelers, summary adjudication of the issues of Gener-

ali's duty to defend and reimburse Travelers for some of the costs of defense in the *Finkelstein* and *Southridge* actions. The Court denies Travelers' motion for summary judgment that INA has the duty to defend in *Finkelstein, Southridge,* or *Ocean Hills,* but grants that motion to the extent that INA has the duty to reimburse defense costs in *Finkelstein* and *Southridge* in the same proportion that INA contributed to settlement but not to exceed the amount paid by Travelers or Generali. Travelers, Generali, and INA will ultimately pay incurred defense costs. The Court denies Travelers' motion as to INA's duty to reimburse in *Ocean Hills* as premature. On December 30, 1994, Generali accepted defense of *Ocean Hills* under a reservation of rights. The issue of whether Generali has a duty to defend in the *Ocean Hills* action is therefore moot. The Court finds, however, that assuming Generali has a duty to defend, such duty arose on February 7, 1994. The Court denies Travelers' motion for summary adjudication of Generali's duty to indemnify in *Finkelstein.*

In sum, INA's contribution to the defense costs of the *Finkelstein* and *Southridge* actions will be either the same proportion of total defense costs as INA's contribution to settlement, or one third of total defense costs, whichever is less. Generali and Travelers will each pay half of the remaining defense costs.

IT IS SO ORDERED.